## NEW ORLEANS TERMINAL CO. v. HANSON.

(Circuit Court of Appeals, Sixth Circuit.   June 6, 1911.)

### No. 2,100.

SALES (§ 302*)—LIEN OF VENDOR—LOUISIANA STATUTE—EXTRATERRITORIAL ENFORCEMENT.

The privilege given to a seller of movable property by Civ. Code La. art. 3227, which provides that "he who has sold to another any movable property which is not paid for has a preference on the price of his property over the other creditors of the purchaser whether the sale was made on credit or without" is not a contract lien on the property but merely a preference over other creditors in the proceeds pertaining to the remedy or administration of the debtor's property, and cannot be enforced extraterritorially against a receiver appointed by a court in another state into which the property has been removed.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 858; Dec. Dig. § 302.*]

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

In Equity.   Appeal by the New Orleans Terminal Company from a decree in a creditors' suit against the Gulf Compress Company denying it a preference claimed.   Affirmed.

Caruthers Ewing, for appellant.

G. T. Fitzhugh (Fitzhugh & Biggs, on the brief), for appellee.

Before SEVERENS and KNAPPEN, Circuit Judges, and DENISON, District Judge.

KNAPPEN, Circuit Judge.   This is an appeal from a decree of the Circuit Court denying the lien or preference claimed by appellant (hereinafter called the claimant) for the unpaid purchase price of certain compresses and other property, sought to be enforced by intervening petition in the receivership proceedings hereafter referred to. The material facts are these:

The claimant, a Louisiana corporation doing business at New Orleans in that state, on September 6, 1907, sold to the Gulf Compress Company, which is an Alabama corporation having its general offices in Memphis, Tenn., two cotton compresses, together with boilers, pumps, piping and other appurtenances, all to be delivered f. o. b. cars at Port Chalmette, La., for the price of $12,000, one-half to be paid in cash, and for the remaining $6,000 the note of the Compress Company to be taken, due in one year with interest.   Delivery was made, one-half of the purchase price paid in cash, and note for the remainder given, all as per contract.   The agreement of sale, which was in writing, contained no reservation of title or lien.   Indeed, by the express terms of the agreement of sale it was "covenanted and agreed on the part of the party of the first part (claimant) that it has the title to said compresses, boilers, etc., free from liens or incumbrances of every character, and that it has the right to make a sale to the party of the second part according to the terms of this contract." The Gulf Compress Company was operating in several states, in-

cluding Arkansas. The property in question was purchased from claimant for the use of the Compress Company "in whatever state it operated," and immediately after being so purchased it was by the Compress Company transported to and installed at Little Rock, Ark., where it has been continuously since said removal and installation, and was in the possession of the Compress Company at the time of the appointment of its receiver, since which time it has been in the possession of that officer. On May 29, 1908, and thus while the property in question was installed in the plant of the Compress Company at Little Rock, Ark., the appellee was appointed receiver of the Compress Company under a bill filed by certain creditors and stockholders of the company, alleging its financial embarrassment and actual insolvency, and the necessity of a receiver for the protection of the interests of creditors and stockholders of the Compress Company, as well as all parties concerned; and praying that the bill be sustained as a general creditors' bill, and for the administration of the property rights and franchises of the Compress Company as a trust fund; that creditors be required to prosecute their claims in the court in which such receivership was prayed; and for an injunction against separate suits by creditors and stockholders. The Compress Company answered, admitting the allegation as to its insolvency, its inability to further carry on its business, and the necessity for the appointment of a receiver. Thereupon a decree was entered adjudging that the bill "be sustained as a general creditors' bill, and as such inure to the benefit of all creditors and stockholders who may come in under the same by intervention or otherwise as the court may herein direct"; requiring creditors to file their respective claims with the receiver appointed by the decree, and requiring the corporation to convey to the receiver all its property, with provision for ancillary proceedings in other jurisdictions. The intervening petition alleged the appointment of ancillary receivers "in those jurisdictions in which the defendant operated its business." The receivership was thus extended over the property in question in Arkansas.

Article 3227 of the Civil Code of Louisiana contains this provision:

"He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser. So that although the vendor may have taken a note, bond, or other acknowledgment from the buyer he still enjoys the privilege."

It is under this statutory provision that the lien in question is claimed for the $6,000 of purchase price represented by the note, and admittedly unpaid. The Circuit Court denied the claimed lien, being of opinion that the statutory privilege under the laws of Louisiana could not be enforced after the property had been carried beyond the territorial limits of that state and into the state of Arkansas, where it was being so held at the time of the assertion of the alleged lien by the receiver subject to the rights of creditors of the Compress Company. Claimant insists that the privilege given by the Louisiana statute can be enforced even extraterritorially, and against the property in the hands of the receiver, upon the ground that the latter took no higher right

than the Compress Company had. The question presented by the appeal relates to the correctness of this contention.

The fundamental inquiry relates to the nature of the "privilege" in question. This privilege, as existing under the Code of Louisiana, is unknown to the common law (Copley v. Sanford, 2 La. Ann. 335, 46 Am. Dec. 548); and we must therefore look to the provisions of the Code of that state. In Voorhies' Revised Civil Code of Louisiana an entire title, consisting of 94 articles, is devoted to the subject of "privileges." Reference thereto, in our opinion, clearly indicates that the term "privilege," as there used, relates to the preference or degree of preference between creditors in the distribution of the property or estates of debtors, as administered under the laws of Louisiana. The first four sections of the title in question read as follows:

"Art. 3182. Whoever has bound himself personally, is obliged to fulfill his engagements out of all his property, movable and immovable, present and future."

No question of vendor's lien as against the purchaser (as distinguished from a preference as between creditors) is thus involved in the vendor's privilege in question.

"Art. 3183. The property of the debtor is the common pledge of his creditors and the proceeds of its sale must be distributed among them ratably, unless there exist among the creditors some lawful causes of preference.

"Art. 3184. Lawful causes of preference are privileges and mortgages.

"Art. 3185. Privilege can be claimed only for those debts to which it is expressly granted in this Code."

Article 3186 declares that:

"Privilege is a right, which the nature of a debt gives to a creditor, and which entitles him to be preferred before other creditors, even those who have mortgages.

"Art. 3187. Among creditors who are privileged, the preference is settled by the different nature of their privileges.

"Art. 3188. The creditors who are in the same rank of privileges, are paid in concurrence; that is, on an equal footing.

Article 3193 provides that "the debts which are privileged on all the movables in general" are (1) funeral charges (the reasonable amount thereof to be determined by the judge); (2) law charges (referring to such as are occasioned by the prosecution of a suit before the courts, with provision for the taxation thereof); (3) expenses of last sickness (to be "fixed by the judge, in case of a dispute"); (4) wages of servants for the current and past year (with provision that those for preceding years "form an ordinary debt, for which the domestics or servants come in by contribution with other ordinary creditors"); (5) six months' supplies of provisions (with provision that retail dealers as to all but the last six months "are placed on the footing of ordinary creditors"); (6) salaries of clerks and other persons of that kind; and (7) dotal rights due to wives by their husbands. Again, the privileges provided for are not always of the same class or attended with the same incidents. For example, the privilege of the lessor over the produce of the estate and the movables found thereon for his rent is declared by article 3218 to be "of a higher nature than mere privilege. The latter is only enforced *on the price arising from the sale* of

movables to which it applies. * * * The lessor, on the contrary, may take the effects themselves and retain them until he is paid." (Italics ours.) And by article 3258 of chapter 6, relating to "the order in which the privileged creditors are to be paid," the lessor is given preference "over all the other privileged debts of the deceased, such as expenses of the last illness and others which have a general priority of the movables." Articles 3220 and 3221 relate to the privilege on the thing pledged, including the sale of the property for payment of the debt. Articles 3222 and 3223 relate to the "privilege of a depositor."

Article 3233 declares that "innkeepers have a privilege, or more properly a right of pledge, of the property of travelers who take their board or lodging with them, by virtue of which they may retain the property and have it sold, etc." The innkeeper "must apply to a tribunal to have his debt ascertained, and the property seized and sold for the payment of it." Some of these privileges are thus shown to be liens and others not. Article 3227, upon which reliance is had here, has been already referred to. The privilege of the vendor of movables is there defined as "a preference *on the price of his property,* over the other creditors of the purchaser." (Italics ours.) The same article gives a "special lien and privilege" to the seller of agricultural products of the United States in the city of New Orleans, to secure the payment of the purchase money for and during the space of five days only after the day of delivery, during which time the seller may seize the product sold "in whatsoever hands or place they may be found, and his claim for the purchase money shall have preference over all others." Section 126 of Garland's Revised Code of Practice of Louisiana provides for "conflict of privilege resulting from writs in several suits" as follows:

"Whenever a conflict of privileges arises between different creditors, all the suits and claims shall be transferred to the court, by whose mandate the property on which the privilege or right of mortgage is to be exercised, *was first served on mesne process, or definitive execution; and said court shall proceed to class said privileges and rights of mortgage according to their rank and dignity, in a summary manner, after notifying all parties interested."* (Italics ours.)

Section 300 provides for enjoining the sheriff from paying to the plaintiff the proceeds of the property seized, in case a third person oppose the payment on the ground that he has a "previous hypothecation or privilege, or any other right by which he claims to be paid in preference to the plaintiff."

It is thus seen that the vendor's privilege as to movables is merely a preference over other creditors in the proceeds of sale of the property affected by that preference; and that by the Louisiana Code the privileges declared thereby are inseparably connected with administrative machinery for their enforcement. This idea of the nature of "privilege" as a preference between creditors in the distribution of the property of debtors is referred to in Lee v. His Creditors, 2 La. Ann. 599, where Chief Justice Eustis, in discussing the question of a claimed "lien or privilege" sought to be enforced against a boat under a law of Kentucky, quotes from the opinion of Judge Watts the state-

188 F.—41

ment "that lien or privilege is part of the remedy seems clear, when we consider the purpose for which they are given. They are the means of enforcing a right, which right is always the payment of a sum of money; and a privilege or lien is the means of compelling such payment, and is analogous to a seizure or execution." While Chief Justice Eustis did not find himself "required to assent" to the proposition that the privilege in all cases pertained exclusively to the remedy, he did not dissent therefrom. His decision, however, seems to treat privilege as "a right or priority of payment."

The rule is well settled that priority or preference in the distribution of the estates of debtors, whether deceased or insolvent, is not a part of the contract, but pertains to the remedy or administration; that the statute laws of the state with respect to such matters have no extra-territorial force; and that the enforcement of such right of preference of priority is dependent upon the law of the place where the property lies and where the court sits. In Harrison v. Sterry, 5 Cranch, 289, 3 L. Ed. 104, which involved the distribution under a bill in equity of the effects of a bankrupt, the parties including assignees under both American and British commissions of bankruptcy, attaching and other creditors, Chief Justice Marshall, in holding that the United States was entitled to a claimed preference over all other creditors, notwithstanding the contract was not made within the United States or with American citizens, said:

"The law of the place where the contract is made is, generally speaking, the law of the contract; i. e., it is the law by which the contract is expounded. But the right of priority forms no part of the contract itself. It is extrinsic, and is rather a personal privilege, dependent on the law of the place where the property lies, and where the court sits which is to decide the cause. In the familiar case of the administration of the estate of a deceased person, the assets are always distributed according to the dignity of the debt, as regulated by the law of the country where the representative of the deceased acts, and from which he derives his powers; not by the law of the country where the contract was made."

In Smith v. Union Bank, 5 Pet. 518, 8 L. Ed. 212, where it was held, that the effects of the intestate in the hands of the administrator were to be distributed among his creditors according to the laws of Maryland, where administration was being had, and not according to the laws of Virginia, where the intestate resided, and where the debt in question was contracted, the doctrine stated by Chief Justice Marshall in Harrison v. Sterry was followed. See, also, Scudder v. Bank, 91 U. S. 406, 412, 413, 23 L. Ed. 245. In Story on the Conflict of Laws, the author, after discussing the conflict upon the question of recognition by foreign countries of the existence or validity of liens or privileges created by the law of the place where the contract was made, says (8th Ed. § 323):

"But the recognition of the existence and validity of such liens by foreign countries is not to be confounded with the giving them a superiority or priority over all other liens and rights acquired in such foreign countries under their own laws, merely because the former liens in the countries where they first attached had there, by law or by custom such a superiority or priority. Such a case would present a very different question, arising from a conflict of rights equally well founded in the respective countries. This very distinc-

tion was pointed out by Mr. Chief Justice Marshall in delivering the opinion of the court in an important case (referring to Harrison v. Sterry, supra). His language was: 'The law of a place where a contract is made is, generally speaking, the law of the contract; i. e., it is the law by which the contract is expounded. But the right of priority forms no part of the contract. It is extrinsic, and rather a personal privilege, dependent on the place where the property lies, and where the court sits which is to decide the cause.' And the doctrine was on that occasion expressly applied to the case of a contract made in a foreign country with a person resident abroad."

The courts of Louisiana recognize the rule that priority of payment created by the laws of another state will not be recognized by the courts of the state in which the property is found; thus:

In Lee v. His Creditors, 2 La. Ann. 600, where it was held that "privileges" on steamers and other vessels established by the laws of other states, unless expressly recognized by the laws of Louisiana will not be enforced there, it was said:

"That a failure to acknowledge, or enforce, liens or privileges on movables created by foreign laws, cannot be considered as derogating from the comity which prevails among states in relation to the effect to be given foreign laws, is obvious. A nation within whose territory personal property is found, has as entire jurisdiction over it while there as it has over immovable property. Its exercise for all purposes is a question of policy, and may be co-extensive with its authority over the latter"; and again "So far as authority is considered in relation to conflict of laws in similar cases, and the comity which is to be observed in relation to the priority of payment created by the laws of the place where the contract is made, the decisions of the highest tribunal in the Union are directly and positively against its recognition. Harrison v. Sterry, 5 Cranch, 298 [3 L. Ed. 104]; Smith, Administrator, v. Union Bank, etc., 5 Pet. 523 [8 L. Ed. 212]. In the distribution of insolvent estates under our laws, we are not aware of any distinction that is recognized among creditors, dependent on the place of the origin of the debts. The distribution is made according to the order of privileges and mortgages established in the Code, as of the proceeds of a common pledge."

In Swasey v. Steamer Montgomery, 12 La. Ann. 800, the question was presented whether a claim based on a statute of the state of Alabama, granting a privilege to demand toll of vessels passing through a channel, should be classed as a privilege in the distribution of the proceeds of the steamer. The claimed privilege was denied, the court saying:

"We consider it settled under the decision in the case of Lee v. His Creditors, 2 La. Ann. 600, that privileges must be regulated by the law of the forum, and that none can be claimed except such as are expressly granted in the Civil Code."

In Gause v. Bullard, 16 La. Ann. 107, 108, the intervener claimed a privilege by reason of the purchase of property in question in the State of Georgia, by a citizen of that state, and with funds raised therein. In denying this privilege the court said:

"It is perfectly immaterial whether, under the facts of this case, the intervener could claim a privilege in the state of Georgia; for this court has, on more than one occasion, said that we are to look to the provisions of our own laws for the existence and enforcement of privileges. Lee v. His Creditors, 2 La. Ann. 600; Wickham v. Levistones et al., 11 La. Ann. 702; Swasey & Co. v. Steamer Montgomery, 12 La. Ann. 800."

Claimant invokes Carlin v. Gordy, 32 La. Ann. 1285, as holding that the vendor's privilege is not a matter of remedy or administration. It is true that in that case the court used this language:

"The privilege of the vendor is founded on the right of property. Payment of the price is essential to the vesting of the indefeasible title in the vendee. The vendor's rights to, and securities for, the payment of the price have always commended themselves to the favorable consideration of our courts."

This was said, however, in a case involving a contest in the Louisiana courts between the mortgagee of property and the vendor, who had levied "in execution of her judgment recognizing her vendor's privilege thereon," created by the laws of Louisiana. We see nothing in this decision opposed to the view we have taken of the nature of this privilege.

Claimant relies, moreover, upon the familiar rule that while the statutes of a state have in themselves no extraterritorial force, yet rights acquired under them are always enforced by comity in the state and national courts in other states, unless they are opposed to public policy or laws of the forum.

But as we have already said, we think the privilege relied upon here is not a right acquired by contract under the laws of Louisiana, but is merely a preference relating to the distribution of the property or estates of debtors, and as such only a matter of remedy or administration with respect to which the doctrine of comity has no application. The statutes of neither Arkansas nor Tennessee recognize the existence of the vendor's privilege claimed here, and of course provide no machinery for enforcing it under ordinary circumstances. In view of the nature and extent of the receivership proceedings, the question of forum as between the two states is immaterial.

In view of the conclusion we have reached as to the nature of the claimed privilege, it is not necessary to consider whether the enforcement of a vendor's lien created by contract would be opposed to the public policy of the State of Arkansas. Nor is it material to this inquiry that the Louisiana courts recognize, as is asserted, the doctrine of comity as to contract rights to the extent of making it a matter not only of judicial recognition, but of Code requirement. The views we have expressed make it also unnecessary to consider the proposition urged by the receiver, that the property in question has become immovable by reason of its being affixed to the real estate, and thus not subject to the privilege under the Louisiana Code through failure to give the notice required in order to preserve the privilege as to immovable property. Nor is it necessary to determine whether the receivership ordered under the bill in this cause operated as an attachment in favor of general creditors of the Compress Company. It is enough to say that the proceeding is one for the administration of the estate of an insolvent corporation, and that the privilege asserted relates to the assets of such insolvent corporation, so in the course of administration.

For the reasons we have stated, we are of opinion that the claimant had no privilege or lien upon the property in question enforceable in

the court to which application was made, and in which administration of the affairs of the insolvent corporation is being had.

It follows that the Circuit Court rightly denied the privilege asserted, and that its order should be affirmed.