In the Matter of RALPH A. VEON, INC., Veon Transportation Co., Raveon Corporation, Ohio Fuel Sales Company, World Services Corporation & Peggs Run Coal Company, Inc., Debtors.

OHIO FUEL SALES COMPANY, Plaintiff,

v.

KEFFLER AND ROSE ENTERPRISES, INC., Defendant,

First Pennsylvania Bank, N. A., Intervenor.

Bankruptcy No. 79–881.
Adv. No. 80–169.

United States Bankruptcy Court, W. D. Pennsylvania.

Jan. 29, 1982.

Kenneth P. Simon, Pittsburgh, Pa., for debtor.

Frederick S. Coombs, III, Youngstown, Ohio, and Christopher Beck, Pittsburgh, Pa., for defendant.

Philip E. Beard, Pittsburgh, Pa., for intervenor.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is the complaint of Ohio Fuel Sales Company in which the plaintiff seeks return of the value of property it transferred to defendant, Keffler and Rose, within the three months preceding the filing of plaintiff's bankruptcy petition on the basis that the transfer was a preference pursuant to 11 U.S.C. § 547 of the Bankruptcy Code. First Pennsylvania Bank, N. A., has intervened in this proceeding, alleging that as a result of its perfected security interest in the property transferred, it is entitled to any funds recovered by the plaintiff in the case at bar. The Court bifurcates the issue to allow the intervenor an opportunity to present testimony. Thus, the rights of the intervenor vis a vis the plaintiff will be determined at a later date.

The facts surrounding the alleged preferential transfer by Ohio Fuel Sales to Keffler and Rose are as follows. Defendant, Keffler and Rose Enterprises, Inc., is a corporation with its principal office in Lisbon, Columbiana, Ohio; and is engaged in the business of coal exploration, mining and sales. Ohio Fuel Sales, which is also engaged in the purchase and sale of coal, filed a Petition for Relief under Chapter 11 of the Bankruptcy Code on October 19, 1979. Prior to August 1, 1979, plaintiff was indebted to the defendant for coal purchased in the amount of $510,656.24 principal and $52,851.90 interest. Defendant initiated conversations with the plaintiff for purposes of determining methods by which plaintiff could reduce its indebtedness. As a result of negotiations, Jack Courtney, president of Ohio Fuel Sales and officers of the defendant corporation entered into an oral agreement concerning coal described as Class No. 4 located at plaintiff's Patterson Pit, Lawrence County, Pennsylvania.

Ohio Fuel Sales agreed to sell the coal located at this site to Keffler and Rose in return for the defendant's agreement to credit the plaintiff's overdue account in the amount of $18.00 per ton F.O.B. the Keffler and Rose Plant, and $14.50 F.O.B. the Patterson Pit. Previously, the coal mined at this site had been processed at plaintiff's Peg's Run cleaning plant in preparation for sale. The plant was plagued with labor disputes which culminated in a prolonged strike, thus, the facilities became inoperative. It was the intention of both parties at the outset of this agreement that upon delivery of this coal, the defendant would process it at its recently founded cleaning facility, Keffler and Rose Preparation Company.

During the month of August, 1979, 1,981.83 tons of coal at $18.00 per ton were transferred from plaintiff to defendant. During September, 1979, 7,845.54 tons were transferred at the same price. During October, 1979, 5,315.15 tons at $18.00 per ton, and 1,639.81 tons at $14.50 were transferred. The sum of the transfers within the ninety day period totalled $296,342.61. Plaintiff originally claimed a preference in this amount, but subsequently amended its complaint to reflect goods delivered by Keffler and Rose during the ninety day period. Plaintiff reduced the claim in the amount

of $4,483.37, and ultimately requests that the Court enter judgment against the defendant in the amount of $291,589.24.

Plaintiff alleges that the transfer is avoidable under 11 U.S.C. § 547 of the Bankruptcy Code because it was for the benefit of a creditor on account of an antecedent debt owed by the debtor-in-possession before the transfer was made; made while the debtor-in-possession was insolvent within ninety days before the date of filing of the petition; and enabled the creditor to receive more than it would have received under Chapter 7 of the Bankruptcy Code.

Defendant argues that the transaction was not a preference; and alternatively, that if the transfer is deemed preferential, the defendant is entitled to a credit for processing, transportation and interest charges. The defendant advances the following arguments: 1) the debtor-in-possession is limited to recovery of the true value of the coal transferred, 2) defendant is entitled to a credit for necessary expenses incurred in processing and marketing the coal, 3) plaintiff is not entitled to recover that portion of the price attributable to coal transportation, 4) plaintiff may not recover the amount equivalent to accrued interest on the overdue account, and 5) the transfer of coal was not on account of antecedent indebtedness, but rather a contemporaneous exchange for new value.

■ A brief discussion of each argument follows. The defendant first argues that the value attributed to the transaction is not the true value. The defendant argues that since the coal was essentially of unmarketable quality, the plaintiff's recovery should be limited to the true value of the coal transferred. The Court is unconvinced of the plausibility of this argument. The case of *Levy v. Rendle Contracting and Dock Bldg. Co.*, 9 F.Supp. 1009 (D.C.Mass. 1935) cited by the defendant in support of this proposition is readily distinguishable from the present case at bar on the basis of its facts. In the former, the parties stipulated to the fair market value of the property transferred, whereas in the present situation, the value of the coal is a major point of contention. The testimony indicates that the plaintiff had previously sold No. 4 coal to a third party at a price of $17.70 F.O.B. buyer's plant. Testimony also reveals that although there was little market for No. 4 coal in its natural state, it could be processed and blended to a specified quality to meet the requirements of a buyer's order. Ultimately, both parties set the value of the coal, and the defendant is estopped from now complaining that the agreed upon price did not accurately reflect the true value.

■ The defendant next asserts that it is entitled to a credit against any amount recoverable by the debtor-in-possession on account of reasonable and necessary expenses incurred by the defendant in marketing and coal. Although 11 U.S.C. § 550(d)(1) provides that:

A good faith transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—

(A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by such transferee from such property; and

(B) any increase in value as a result of such improvement, of the property transferred.

it is clear that the lien does not attach when recovery of the value rather than the actual property is sought in a preference action; for the estate will not benefit from the improvement unless the property originally transferred is recovered. 4 Collier on Bankruptcy § 550.40 at 550–13 (15 Ed. 1980).

Further, the defendant contends that it incurred extraordinary expenses in excess of $70,000 in processing the coal due to its high sulphuric acid content. The defendant incurred abnormal expenses for neutralization chemicals and repair parts for its machinery. However, the testimony of the processing plant personnel indicates the following: the wash plant was in existence for only a short time when the machinery dam-

age occurred; random coal samples were sent to an independent laboratory for analysis on a daily basis; and ostensibly the damage resulted from the particular processing method chosen rather than the coal's acid content. After the initial machinery damage occurred, the defendant altered its method and further damage was avoided. Whether the damage was due to the inexperience of the facility's personnel or inadequate analysis of available laboratory reports, the loss was through no fault of the plaintiff. Accordingly, a credit in favor of the defendant for processing expenses is not indicated.

■ Defendant next argues that both the 1% interest on plaintiff's overdue account as well as transporting costs be deducted from the plaintiff's recovery. That the defendant has a claim against the estate for interest charges is clear, but there is no basis for deducting these amounts from the preference claim.

■ Finally, the defendant argues that the plaintiff's transfer of property to the defendant was not on account of antecedent indebtedness, but rather a contemporaneous exchange for new value. Defendant contends that the coal was not readily marketable in its natural state. Further, its location obstructed access to the more marketable coal which lay beneath. In essence, it is their contention that the removal of this unmarketable coal amounted to the providing of a service; this service constituting "new value" as defined by 11 U.S.C. § 547(a)(2).

The Court disagrees that this transaction can accurately be characterized as a contemporaneous exchange for new value. The testimony of Mr. Keffler, president of the defendant corporation, indicates the following at page 79: "(Ohio Fuel Sales) was to transport Veon Patterson No. 4 coal to our plant to compensate for some of the billing that their company owed to us; ... we could utilize it, possibly cleaning it up and making a marketable product out of it."

Nor is the Court convinced that the coal was unmarketable. Both parties entered extensive testimony focusing upon the ash, sulphur content, and BTU of the coal. Nowhere in the testimony is there any indication that the sale was conditioned upon specific attributes of the coal; nor was there any indication that the plaintiff expressly warranted the coal's quality. However, the evidence clearly reveals that the defendant's officers were familiar with the coal's quality prior to their entry into the oral agreement with the plaintiff for its purchase.

Further, the Supreme Court of Pennsylvania, in *Rinehimer v. Lehigh and Wilkes-Barre Coal Company*, 416 Pa. 216, 206 A.2d 48 (1965) has adopted the following definition of merchantable coal as originally elucidated in *Genelow Mining Co. v. Panzetta [Panzitta] Mining Co.*, 57 [51] Luz. 255 (1966). "Merchantable coal is defined as coal which is ordinarily used for sale and can usually be sold at a profit." The Court is convinced that this definition adequately describes the coal in the case at bar.

Although neither party has raised the applicable sections of the Uniform Commercial Code in its argument, the Court concludes the facts of the present case would not have supported an action by the defendant for breach of implied warranty of merchantability. (13 Pa.C.S.A. § 2314) Nor could it have been argued that the plaintiff breached the implied warranty of fitness for a particular purpose (13 Pa.C.S.A. § 2315), for this warranty is operative only in a situation where the buyer relies upon the seller's skill and judgment. Clearly, the parties in the present action were equally knowledgeable in the business of coal mining, preparation and sale. Therefore, the Court is satisfied that the coal was marketable.

■ Based on the foregoing, the Court concludes that the plaintiff has successfully met the burden of proving all elements of a preference. The transfer of coal by plaintiff, Ohio Fuel Sales, to defendant, Keffler and Rose, was a transfer of property to a creditor on account of an antecedent debt

made while the debtor-in-possession was insolvent, and within ninety days of the filing of the petition in bankruptcy under Chapter 11 of the Bankruptcy Code. This transfer enabled Keffler and Rose to receive more than it would have received under liquidation without the transfer having been made. Therefore the Court will enter judgment against defendant, Keffler and Rose, in the amount of $291,859.24. An appropriate order will be entered.