In re APOLLO HOLLOW METAL AND HARDWARE COMPANY, INC., Debtor.

Jack BROWN, Trustee, Plaintiff,

v.

BORCHERS & HEIMSOTH CONSTRUCTION COMPANY, INC., et al., Defendants.

Bankruptcy No. 83–02281–C.
Adv. No. 84–0425–C.

United States Bankruptcy Court, W.D. Missouri, C.D.

March 17, 1987.

Louise L. Lucas, Swanson, Midgley, Gangwere, Clarke & Kitchen, Kansas City, Mo., for plaintiff.

Larry M. Burditt, Warsaw, Mo., for defendants.

## MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

This adversary action pits the Trustee against Borchers & Heimsoth Construction Company, Inc. (defendant hereafter) to recover assets of the debtor allegedly fraudulently conveyed to defendant in violation of Section 548 as well as an alleged preference under Section 547. The facts are somewhat involved and need be set out in detail.

Debtor was a corporation owned by the same two principals as defendant. It had been formed primarily to order, purchase and supply items needed by defendant to carry on the latter's construction business. Carolyn Wilson had worked for debtor from 1973 and apparently had become, de facto if not de jure, the general manager. In 1981, the two principals in defendant sold all of the stock in debtor corporation to Carolyn Wilson. Defendant owned the building where debtor had carried on its business and debtor continued to occupy the premises but never paid rent. According to the principal note issued on September 1, 1981, debtor (not Carolyn Wilson) was to pay to defendant (not the principals of defendant) the sum of $128,000.00 in one year from date with interest at 10%. This

apparently was for funds owing to defendant by debtor on September 1, 1981. Also Carolyn Wilson and her spouse Charles Wilson executed two notes for $71,000.00 each, payable $7,100.00 per year plus 10% interest, to defendant's principals to pay for the latter's stock. There was no evidence that any payment was made on any of the three notes. The two principals of defendant allegedly resigned as officers and directors as of the date of the sale, although their names were subsequently shown on various corporate filings with the State of Missouri as directors or officers.

Needless to say, the debtor did not prosper with the change of ownership and after Christmas time of 1983, an employee of defendant, one Pogue or one Meisner, obtained the keys from Carolyn Wilson. This left defendant with technical, physical possession of its building but occupied by debtor's inventory. The contract for sale provided that the common stock of debtor would be held in escrow until paid for but it appears that some stock was issued by debtor to Carolyn Wilson and her spouse. No security interest was taken in the physical assets of debtor. It seems safe to say that defendant may have realized at this point that it had a tiger by the tail, however, certainly it never realized the size of its teeth or claws.

Debtor had never paid any rent and defendant then filed a rent and possession suit against debtor. Although debtor had ceased business, service was had and default judgment entered against debtor on March 30, 1983. The judgment was for possession and $6,800.00 in rent. An execution writ was issued. On May 24, 1983, the Sheriff of Benton County levied on the inventory of debtor in the building owned and occupied by defendant. On June 30, 1983, the Sheriff sold the entire inventory to defendant for $6,800.00 (the amount of its judgment against debtor for rent). On August 30, 1983, an involuntary petition in bankruptcy was filed against debtor by other creditors and the Trustee thereafter filed this adversary action against defendant under Sections 547 and 548 of the Code alleging preference and fraudulent trans-

fer. The trial of the adversary proceeded on both issues.

At the trial the facts above stated were generally conceded by both sides. What was hotly contested was the value of the inventory, the amount and character of the inventory and the degree of control defendant or its two principals had exercised over debtor in its short sojourn under the leadership of Carolyn Wilson. Each side introduced or tried to introduce a voluminous number of exhibits, including Missouri corporation filings, inventories of hardware and metal at various times, photographs of the inventory as well as the testimony of Carolyn Wilson, Melvin Heimsoth and Ervin E. Borchers on said issues. Each side presented an alleged expert on the value of the inventory. Without detailing all of the exhibits or the conflicting testimony of the witnesses or the conflicting opinions of the opposing experts, the Court after careful consideration of all evidence presented, finds that the inventory was worth $30,-000.00 when defendant took control of it physically in December of 1983 or January of 1984. The Court further finds that there was no evidence that any deterioration in quantity or value from that date until May 24, 1984, when the Sheriff levied upon it or until June 30, 1984, when the Sheriff sold it to defendant can be attributed to any cause other than the commissions or omissions of the defendant.

■ May the Trustee claim the $6,800.00 paid for the inventory or the inventory on the grounds of preferential transfer? The pertinent portions of Section 547 are as follows:

"(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(e)(1) For the purposes of this section—

(B) a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee.

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

(f) For the purposes of this section, a debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

(g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section, and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section".

To answer the preference question the Court must first determine what period of time (90 days or 365 days) is to be used in measuring the alleged preference to the defendant. The reason for that is that if defendant is not an insider, then defendant's argument is that the transfer of interest took place on May 24, 1983, when the Sheriff levied and not June 30, 1983, when the Sheriff sold. Presuming that defendant is correct, a fact neither conceded by the Trustee nor decided herein by the Court, it would follow that the transfer of interest was more than 90 days prior to the filing of the bankruptcy. Was defendant an insider? That question is not so easy. Section 101(28)(B) of the Code defines an insider of a corporate debtor as follows:

(B) if the debtor is a corporation—
(i) director of the debtor;
(ii) officer of the debtor;
(iii) person in control of the debtor;
(iv) partnership in which the debtor is a general partner;
(v) general partner of the debtor; or
(vi) relative of a general partner, director, officer, or person in control of the debtor;

Subsection 28(E) of Section 101 is also pertinent:

(E) affiliate, or insider of an affiliate as if such affiliate were the debtor; and

Subsection 28(F) of Section 101 is likewise pertinent:

(F) managing agent of the debtor;

Finally, the Court looks to subsection (2) of Section 101 of the Code to amplify Section 101(28)(E).

For several reasons, the Court concludes that defendant was an insider. Defendant was a corporation controlled, owned and operated by two individuals. Those same two individuals owned debtor from its formation until its sale to Carolyn Wilson in 1981. Defendant and/or those two individuals held the stock in escrow, were the major customer of debtor, were the major creditor of debtor, took physical possession of debtor's assets in December of 1983 or January of 1984 and had made substantial advances to debtor from 1981 through 1983. Whether the Court reasons from Section 101(28)(B) or Section 101(28)(E) or Section 101(28)(F), it comes to the same conclusion, namely, that either individually, jointly, or in concert, Mr. Borchers, Mr. Heimsoth and defendant were not distinguishable, did control debtor and were affiliates of or managing agents of debtor to such a degree that defendant through its acts and the acts of its only principals, was an insider. Therefore under the 365 day time frame, the transfer of interest was a preference and the $6,800.00 may be recovered by the Trustee.

■ This leaves then the question of fraudulent transfer under Section 548. The pertinent portions of that section provide:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

(ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

(iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

Starting with the *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th

Cir.1980) and as adopted and modified by the Court of Appeals of the Eighth Circuit in *In re Hulm*, 738 F.2d 323 (8th Cir.1984), certain foreclosure proceedings have been held to be violative of Section 548. C.F. *In re Madrid*, 10 B.R. 795 (Bankr.D.Nev. 1981). However, those cases have not specifically addressed the question as to whether a judicial sale of personal property for less than 70% in *Durrett* or "reasonably equivalent value" in *Hulm* are also violative of Section 548. A number of commentators (the undersigned included); see, *e.g.*, Koger & Acconcia, *The Hulm Decision: A Milestone for Creditors*, 91 Com. L.J. 301, 317–20 (1986) have speculated that there is no reason to believe that such foreclosure transfers of personal property stand on any different pedestals than the foreclosure transfers of real estate found voidable in *Durrett* or *Hulm*. The present instance seems even less immune from the Trustee's pursuit under Section 548. Here, the defendant had no security interest (perfected or otherwise) but only a state court judgment. Under the aegis of that judgment for $6,800.00, the defendant caused the Sheriff to levy on $30,000.00 of personal property and sell it on the Court House steps. Then as the only bidder, defendant became the owner by bidding its $6,800.00 judgment. If this Court reads the *Hulm* decision correctly, this is not "reasonably equivalent value." Therefore, since the events all occurred within the Section 548 one year statute of limitations, this Court concludes that the Trustee may avoid the transfer under Section 548.

■ This leaves only three points to be ruled. First, defendant is also admittedly in possession of a Chevrolet truck that was the property of debtor. Defendant had no lien on the title, the Sheriff apparently did not sell the truck at the Sheriff's sale and the evidence is unclear as to what, if any use the defendant made of the truck from the date of physical possession. Defendant is ORDERED to turn over the truck to the Trustee.

■ Second, and of far greater importance, defendant contends that if the Court rules against it, it should be allowed to turn over the inventory now in its possession in lieu of any monetary judgment. The Court does not agree. It is the belief of the Court that from the December of 1983 or January of 1984 date until this adversary action was filed on October 2, 1984, defendant made use of and consumed certain hardware and metal that comprised the former inventory of debtor. To allow defendant to return what it now possesses in full satisfaction of all liability would not be appropriate or equitable in view of the depletion and the time involved.

■ Finally, the Trustee's action was also against Carolyn Wilson. At the conclusion of the Trustee's case, her counsel moved for dismissal and the Court granted same. There was insufficient evidence presented to hold her responsible. She is, therefore, DISCHARGED.

This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law in accordance with Rule 7052, Rules of Bankruptcy.

Counsel for the Trustee may submit a proposed Judgment Entry for $30,000.00 against Borchers & Heimsoth Construction Company, Inc.