In re KING ARTHUR CLOCK
COMPANY, INC., Debtor.

Miller A. WIDEMIRE,
Trustee, Plaintiff,

v.

SIDDIKI BROS., INC., Defendant.

Bankruptcy No. 87–00759.
Adv. No. 89–0028.

United States Bankruptcy Court,
S.D. Alabama, S.D.

Aug. 30, 1989.

Miller A. Widemire, Mobile, Ala., for plaintiff.

Jane A. Faia, New Orleans, La., for defendant.

## ORDER

GORDON B. KAHN, Chief Judge.

This matter having come on for hearing upon the complaint of the Trustee seeking to recover a preference against Siddiki Bros., Inc.; due notice of said hearing having been given; and Jane A. Faia having appeared for Siddiki Bros., Inc.; and Trustee Miller A. Widemire having appeared; and arguments and evidence having been presented; and the matter having been taken under submission for the filing of briefs; now, therefore, the Court finds, concludes, and orders as follows:

## FINDINGS OF FACT

1. On May 11, 1987 King Arthur Clock Company, Inc. ("King Arthur") filed a petition for relief under Chapter 11 of the bankruptcy code. The case was converted to a Chapter 7 proceeding on November 9, 1988.

2. The debtor's primary business was the sale of grandfather clocks, however the debtor also sold jewelry at its various clock stores. The debtor acquired inventory for its jewelry sales from, among others, Siddiki Bros., Inc. of New Orleans, Louisiana.

3. Siddiki Bros. was aware that the jewelry being purchased by King Arthur's would be located in Alabama. The purchased jewelry was either mailed to the debtor's Daphne, Alabama store or picked up by King Arthur's employees at Siddiki Bros.' offices in New Orleans.

4. In February, 1987 Siddiki Bros. contacted the debtor because the debtor was not making payments on its jewelry inventory. The debtor told Siddiki Bros. to come and pick up the jewelry. Between February 15 and February 18, 1987, Rafa Siddiki, Vice President of Siddiki Bros., traveled to the debtor's Daphne store to retrieve the merchandise. On February 25, 1987 Siddiki Bros. issued a credit memo in favor of King Arthur in the amount of $17,265.54.

5. The amount of claims filed against the debtor's estate exceed the amount of assets available for distribution to creditors.

## CONCLUSIONS OF LAW

Siddiki Bros. maintains that at the time these sales of jewelry were made it acquired a statutory lien under Louisiana Civil Code Article 3227. A determination that such a lien is valid would preclude the necessity of determining if a preference were made. The relevant statutory language from Article 3227 is as follows:

He who has sold to another any movable property, which is not paid for, has a preference on the price of his property over the other creditors of the purchaser, whether the sale was made on a credit or without, if the property still remains in the possession of the purchaser.

La.Civ.Code Ann. art. 3227.

The defendant's theory is that since the property in question was jewelry (movable property) and sold on credit, the transactions fall within the purview of the statutory language of Article 3227 and its rights to the jewelry are superior to those of the Trustee.

Section 545 of the Code provides that "[t]he trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien ...

(2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists; ..."

11 U.S.C. § 545(2).

The Trustee argues that Louisiana's "vendor's privilege" or statutory lien does not have extraterritorial effect and that the creditor's rights are not perfected in the state of Alabama. In support of this prop-

osition he cites *New Orleans Terminal Co. v. Hanson,* 188 F. 638 (6th Cir.1911). There the appeals court said "The rule is well settled that priority or preference in the distribution of the estates of debtors, whether deceased or insolvent, is not a part of the contract, but pertains to the remedy or administration; that the statute laws of the state with respect to such matters have no extraterritorial force; and that the enforcement of such right of preference or priority is dependent upon the law of the place where the property lies and where the court sits."

Defendant relies heavily on the case of *In re Misco Supply Co.,* 43 B.R. 651 (Bkrtcy.Kansas 1984) to support its position that the law of Louisiana governs. However, the defendant's reliance on *Misco* is misplaced as it is not apparent from the facts stated in *Misco* if the property in question was located in Kansas where the bankruptcy action was pending or in Louisiana where it was purchased. This Court feels that such a fact would have a tremendous effect on the decision.[1] Accordingly, *Misco* is not controlling in this case.

In the case at hand, the property was located within the state of Alabama and this court sits in the state of Alabama. Therefore, the law of the state of Alabama controls with regard to perfection. *Hanson,* supra. In order to perfect a security interest in inventory in Alabama a financing statement must be filed in the Secretary of State's office. Alabama Code §§ 7–9–302(1) and 7–9–401(1)(c) (1984). Because such a statement was not filed in the instant case, Siddiki Bros. is not perfected as against the trustee.

■ As a result of the defendant not being secured, it must be determined whether a preference occurred. Pursuant to 11 U.S.C. § 547(b), the Trustee may avoid a transfer of an interest of the debtor in property:

"(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
  (A) on or within 90 days before date of the filing of the petition; ... and
(5) that enables such creditor to receive more than such creditor would receive if—
  (A) the case were a case under chapter 7 of this title;
  (B) the transfer had not been made;
  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Trustee has the burden of proving the avoidability of the transfer, 11 U.S.C. § 547(g). It is clear from the evidence that elements one (1) through four (4) above have been met. The transfer of the jewelry was for the benefit of Siddiki Bros., for an antecedent debt owed by the debtor before the transfer was made and that such transfer was made within 90 days before the conversion of debtor's Chapter 11 case to Chapter 7. The debtor is presumed to have been insolvent during the 90 days immediately prior to the filing of the bankruptcy petition. 11 U.S.C. §§ 547(b)(1–4) and 547(f).

The only issue that remains is whether Siddiki Bros. has received more than it would have received if the transfer had not been made and the defendant had received payment of its claim to the extent provided by the Bankruptcy Code. 11 U.S.C. 547(b)(5). Because the defendant did not have a perfected security interest and because the claims against the debtor's estate far exceed the amount available for distribution to unsecured creditors, the Court concludes that Siddiki Bros. received more than it would have under a Chapter 7 liqui-

**1.** Comments contained in a footnote in *In re Trahan* indicate that *New Orleans Terminal Co. v. Hanson,* supra, was not controlling because it "involved an interpretation of the Louisiana law in a conflict of laws setting, and an opposite result might well be reached in Louisiana, applying its own law for application within its

territorial limits". 283 F.Supp. 620, 624, *aff'd* 402 F.2d 796, *cert. denied sub nom Bernard v. Beneficial Finance Co.,* 394 U.S. 930, 89 S.Ct. 1189, 22 L.Ed.2d 459 (1969). *Trahan* was relied upon by the *Misco* court to support its conclusion, leading this Court to believe that the *Misco* property was located in the state of Louisiana.

**672**

dation if this transfer had not been made. Therefore, the transfer to Siddiki Bros. is voidable as a preference by the trustee.

■ When a transfer of property is avoided under § 547 the Trustee may recover the transferred property or if the Court orders, the value of the property. 11 U.S.C. § 550(a). The term value connotes market value. In the instant case, all we have is an amount the debtor was given credit for upon return of the jewelry. This figure does not provide the Court with information as to what the Trustee might receive were he to offer the jewelry for sale. *In re Vann*, 26 B.R. 148 (S.D.Ohio 1983); *In re Handsco Distributing, Inc.*, 32 B.R. 358 (S.D.Ohio 1983). The Court therefore orders the jewelry that was picked up from the debtor's Daphne store between February 15 and February 18, 1987 be returned to the Trustee. The defendant shall return to the Trustee a duplicate of any piece of jewelry not still in the defendant's possession. Now, therefore, it is

ORDER

ORDERED that the Trustee's complaint to avoid a transfer of property of the debtor be, and it hereby is, GRANTED; and it is further

ORDERED that the jewelry that was picked up from the debtor's Daphne store between February 15 and February 18, 1987 be returned to the Trustee within 30 days from the date of this Order; and it is further

ORDERED that the defendant shall return to the Trustee a duplicate of any piece of jewelry not still in the defendant's possession within 30 days from the date of this Order.