**In re INTERNATIONAL SKI SERVICE, INC., Debtor.**

**Peter M. GENNRICH, Trustee, Plaintiff,**

**v.**

**MONTANA SPORT U.S.A., LTD., Defendant.**

**Bankruptcy No. MM7–89–00738. Adv. No. 89–0152–7.**

United States Bankruptcy Court, W.D. Wisconsin.

June 25, 1990.

Peter M. Gennrich, Jenswold, Studt, Hanson, Clark & Kaufmann, Madison, Wis., for plaintiff.

Michael E. Kepler, Kepler & Peyton, Madison, Wis., for defendant.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

Plaintiff, Peter M. Gennrich, trustee of International Ski Service, Inc. ("International Ski"), seeks to recover from Defendant, Montana Sport U.S.A., Ltd. ("Montana"), the value of what has been stipulated by Montana to be a preferential transfer.[1] The facts are not disputed.

Within ninety days prior to filing its bankruptcy petition, International Ski returned to Montana some machinery and supplies which it had received from Montana but for which it had not yet paid. In exchange for the returned goods, Montana credited International Ski the amount of $25,105.72 on its payment obligation.

Montana warehoused two of the returned machines upon their receipt from International Ski. A third machine was received in damaged condition and was subsequently repaired by Montana and sold. The parties agree that with respect to this third machine, the trustee is entitled to a money judgment in the amount of $219.32, a figure which represents the difference between the net sale proceeds and Montana's security interest. In addition to the three machines, International Ski returned equipment and supplies which are generally fungible. It is conceded that Montana is capable of returning to the trustee the same two machines and the same or identical equipment and supplies which it received from International Ski.

At the hearing on this matter the trustee asserted that he and Montana had reached an agreement on the value of the property, and Montana did not contest this assertion. The stipulation on file with the court does not, however, contain an explicit agreement concerning the value of the property. Instead the stipulation states that "Trustee maintains that he is entitled to a further money judgment against Montana in the amount of the credit of $25,105.72 for returned machinery and equipment," and

---

1. A transfer is preferential when the requirements of 11 U.S.C. § 547(b) have been fulfilled. 11 U.S.C. § 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

that "Montana maintains that it is entitled to turn over to the Trustee the returned machinery and equipment or its equivalent in kind having a value of $25,105.72." Combining the representation in court with the statements in the stipulation, I will infer that the trustee and Montana agree that the value of the property transferred is $25,105.72.

■ The sole issue to decide is whether pursuant to 11 U.S.C. § 550(a) the trustee may recover from Montana the $25,105.72 value of the returned goods, or whether Montana may instead return the two machines and comparable equipment and supplies. While some cases suggest that pursuant to the language of 11 U.S.C. § 550(a) the property should be ordered returned unless to do so would be inequitable, other cases suggest that the decision as to whether Montana must return the value of the property rather than the property itself is within the court's discretion. Cases similar to ours do not uniformly award recovery of the property as opposed to the value of the property or vice versa.

11 U.S.C. § 550(a) provides:

(a) Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.

As Countryman has noted, "[n]either the statute nor the legislative history gives any guidance as to when the court should order a transferee or a beneficiary of a transfer to pay over the value of the property transferred." Countryman, *The Trustee's Recovery in Preference Actions,* 3 Bankr. Dev.J. 449, 467 (1986). *See also In re First Software Corp.,* 107 B.R. 417, 423 (D.Mass.1989); Lawrence P. King, 4 *Collier on Bankruptcy* ¶ 550.02 at 550–6 n. 6

(Matthew Bender, 15th ed 1985). Countryman continued:

Congress incorporated the [federal Bankruptcy] Commission's proposal not to limit judgments for the value of the property to cases where the property had been "converted," but not its proposal to give the transferees an option to return the property or its value. The option is apparently now given to the court rather than to the trustee, as it was under an earlier version of Section 60.

Countryman, 3 Bankr.Dev.J. at 467 (footnotes omitted). *But see In re Laughlin,* 18 B.R. 778 (Bankr.W.D.Mo.1982) (giving the transferee the option to return either the real estate transferred or the value of the real estate); Norton, ed, 2 *Norton Bankruptcy Law and Practice* § 36.03 at 3 (Callaghan, 1981). ("To the extent that a transferee is unprotected, a trustee and an individual debtor have the option of recovering either the actual property involved in a voidable transfer or its value.").

Montana contends that "Congress by the order of the remedies within the statute [Section 550(a) ] preferred that the property be returned to the trustee after successful lien avoidance." This contention finds some support in the case law: "Section 550(a) expresses a congressional intent that a transferee should return the property transferred unless to do so would be inequitable, in which event he must pay the property's value." *In re General Industries, Inc.,* 79 B.R. 124, 135 (Bankr.D.Mass. 1987), *citing In re Morris Communications NC, Inc.,* 75 B.R. 619, 629 (Bankr.W. D.N.C.1987); *In re Vedaa,* 49 B.R. 409, 411 (Bankr.D.N.D.1985).

*Norton* acknowledges that "[t]he Bankruptcy Code text arguably suggests a preference for recovery of the property itself by indicating that a bankruptcy judge's order must explicitly impose personal liability upon a transferee," but concludes "[i]t is doubtful, however, that a preference for recovery of the property was intended. A bankruptcy judge's order should authorize recovery of the property transferred explicitly, and also can impose personal liability upon a transferee and authorize recovery

of the property transferred in the alternative." 2 *Norton* § 36.03 at 3–4.

Not all courts considering the issue at hand have addressed whether there exists a statutory preference for the return of property. As these courts read Section 550(a), "[i]t is simply within the court's discretion to determine whether a return of the value of property or return of the actual property is the appropriate remedy." *First Software Corp.*, 107 B.R. at 423. *See also Vedaa*, 49 B.R. at 411; *In re Laughlin*, 18 B.R. at 781.

In cases in which the record contains no evidence of the market value of the transferred property, courts have generally ordered that the property itself be recovered:

"Here as in the *Vann* case there is no evidence of market value. All that is mentioned by way of dollar values in this record are the sales prices at one time or another, and there is no justification for concluding that sales price equals market value. Accordingly, we will order that the property transferred to defendant be returned to plaintiff."

*In re Handsco Distributing, Inc.*, 32 B.R. 358, 360 (Bankr.S.D.Ohio 1983). In *In re Vann* the court had stated:

We have come to the conclusion that we cannot order that defendant pay plaintiff the value of the tires which were removed because there is no evidence of what that value is. The term "value" connotes market value, and the record is entirely silent as to what that might be. All that we have is a figure for debtor's costs when he bought the tires, and a figure proffered by defendant of its cost. Neither cost figure provides us with information as to what the trustee might obtain were he to offer the tires for sale. Under optimum circumstances he might well obtain more than debtor's cost for the tires. Accordingly, we have concluded that the proper remedy in this case is to order that the tires which were removed be returned.

*In re Vann*, 26 B.R. 148, 149 (Bankr.S.D. Ohio 1983).

In *In re King Arthur Clock Co., Inc.*, the court stated:

When a transfer of property is avoided under § 547 the Trustee may recover the transferred property or if the Court orders, the value of the property. 11 U.S.C. § 550(a). The term value connotes market value. In the instant case, all we have is an amount the debtor was given credit for upon return of the jewelry. This figure does not provide the Court with information as to what the Trustee might receive were he to offer the jewelry for sale. (citations omitted). The Court therefore orders the jewelry that was picked up from the debtor's Daphne store between February 15 and February 18, 1987 be returned to the Trustee. The defendant shall return to the Trustee a duplicate of any piece of jewelry not still in the defendant's possession.

*In re King Arthur Clock Co., Inc.*, 105 B.R. 669, 672 (Bankr.S.D.Ala.1989).

Similarly, where the record contains conflicting evidence with respect to the value of the transferred property, courts have generally ordered that the property be recovered. In *General Industries* the court stated:

In the circumstances of the present case, it is fairer to all parties that the Court orders the property returned in kind to the Debtor.... Although the Court is confident, based upon the evidence before it, that the values as found are accurate, markets are nevertheless unpredictable and appraisal is an inexact science. This consideration outweighs the fact that the Debtor is now operating with other equipment at a different location so that it has little need for this real estate and equipment.

*General Industries*, 79 B.R. at 135. In *Morris Communications* the court noted that "[t]his approach [returning the property transferred unless to do so would be inequitable] avoids unnecessary contests over the meaning of the term 'value,' and thereby promotes judicial economy." *Morris Communications*, 75 B.R. at 629. *See also In re Crabtree*, 49 B.R. 806, 810, 811 (Bankr.S.D.Ohio 1984); *Vedaa*, 49 B.R. at 411.

On the other hand, "[c]ourts will generally allow the trustee to recover the value of the property where the subject property is itself unrecoverable." *Vedaa*, 49 B.R. at 411, citing *In re Southeast Community Media, Inc.*, 27 B.R. 834 (Bankr.E.D.Tenn. 1983) and *In re Beck*, 25 B.R. 947, 954 (Bankr.N.D.Ohio 1982). *See also In re James B. Downing & Co.*, 74 B.R. 906 (Bankr.N.D.Ill.1987) (involving the transfer of whey which had been mixed into defendants' products or otherwise consumed); *In re Ralph A. Veon, Inc.*, 17 B.R. 590 (Bankr.W.D.Pa.1982) (involving the transfer of coal which had thereafter been processed and marketed by the transferee); Countryman, 3 Bankr.Dev.J. at 467.[2]

Furthermore, it is suggested that "if conversion of the property results in a diminution in value of the property, the court should permit the trustee to recover the value of the property rather than the depleted property.... Depreciation in the value of the property due to market fluctuations may support the bankruptcy court in ordering restitution of the value of the property at the time of transfer." 4 *Collier on Bankruptcy* ¶ 550.02 at 550–6 n. 6. *Collier*'s statements find support in the case law.

In *In re First Software Corp.* the court stated:

In the instant proceeding, the evidence showed a significant decline in the value of the returned inventory between March 25, 1986 and May 24, 1986. As a consequence, the Court is unable to conclude that First Software had a duty to accept the retendered goods or that the retender on May 24, 1986 would have made First Software whole.... If Computer Associates had sold the products it could have realized $1.5 million. It would be unwarranted at this point in time to order the return of the products to First Software since the products had depreciated in value by May 24, 1986 and today are pre-

sumably close to worthless in view of on-going product revisions and improvements.

*In re First Software Corp.*, 84 B.R. 278, 286 (Bankr.D.Mass.1988), *aff'd* 107 B.R. 417 (D.Mass.1989). Similarly, in *In re Apollo Hollow Metal Hardware Co., Inc.*, the court stated:

[d]efendant contends that if the Court rules against it, it should be allowed to turn over the inventory now in its possession in lieu of any monetary judgment. The Court does not agree. It is the belief of the Court that from the December of 1983 or January of 1984 date until this adversary action was filed on October 2, 1984, defendant made use of and consumed certain hardware and metal that comprised the former inventory of debtor. To allow defendant to return what it now possesses in full satisfaction of all liability would not be appropriate or equitable in view of the depletion and the time involved.

*In re Apollo Hollow Metal Hardware Co., Inc.*, 71 B.R. 179, 183 (Bankr.W.D.Mo. 1987). Likewise, in *In re Computer Universe, Inc.* the court stated:

Return of the property would be inappropriate in this instance. The defendant has been using the equipment for over a year. Although there was little direct testimony on the point, the defendant cannot seriously argue that personal property of this sort does not depreciate in value. The plaintiff cannot be made whole by the return of used computer equipment any more than by the return of an automobile that was transferred new but used for a year.

*In re Computer Universe, Inc.*, 58 B.R. 28, 32 (Bankr.M.D.Fla.1986) (citations omitted).

Although Section 550(a) provides that a court may order recovery of the value of transferred property, the statute does not define "value," nor indicate at what time "value" is to be determined. *See Morris*

---

**2.** Courts in two cases have ordered recovery of the value of transferred property when a stated credit on account constituted the best available evidence of the value of that property; in so doing, these courts failed to address both whether the transferred property was recoverable and

the reasoning pursuant to which they were allowing recovery of the value of the property as opposed to the property itself. *See In re Albers*, 67 B.R. 530, 534 (Bankr.N.D.Ohio 1986); *In re Clemons*, 42 B.R. 796, 799 (Bankr.S.D.Ohio 1984).

*Communications,* 75 B.R. at 629. It is generally agreed that "[t]he market price at the time of transfer is the proper measure of damages...." *Downing,* 74 B.R. at 911. For the proposition that "value" equals "fair market value" *see King Arthur Clock,* 105 B.R. at 672; *In re Auxano, Inc.,* 96 B.R. 957, 965 (Bankr.W.D.Mo. 1989); *Handsco Distributing,* 32 B.R. at 360; *Vann,* 26 B.R. at 149. For the proposition that "value" is determined at the time of transfer *see First Software,* 107 B.R. at 423; *Albers,* 67 B.R. 530, 534 (Bankr.N.D.Ohio 1986); *Crabtree,* 49 B.R. at 811; *but see Computer Universe,* 58 B.R. at 32 (petition date).

In two cases courts have determined that the crediting of an account at the time of transfer is evidence of fair market value for Section 550(a) purposes. In *First Software,* the court stated that "[t]he value of $1,500,026 which Computer Associates ascribed [in a credit memo] to the returned software on March 28, 1986, constitutes evidence of its market value on that date for Computer Associates evidently regarded that figure as appropriate for its own business purposes...." This being the case, the court placed on Computer Associates the burden of proving that its contemporaneous determination of the market value of its product was incorrect. *First Software,* 107 B.R. at 423. In *In re Albers* the court stated:

> A review of the documents offered in connection with this bankruptcy proceeding finds that the Defendant credited the Debtors' account in the amount of Six Thousand Five Hundred and no/100 Dollars ($6,500.00) as a result of the transfer.... The evidence presently before this Court reflects that at the time of the conveyances the Defendant valued the trailer at Six Thousand Five Hundred and no/100 Dollars ($6,500.00). Since this information constitutes the best available evidence as to the value of the property, this Court will authorize a judgment for the avoidance of the transfer in this amount.

*In re Albers,* 67 B.R. at 534. *First Software* and *Albers* must be contrasted with *King Arthur's Clock,* in which the credit-ing of an account was not treated as evidence of fair market value. *King Arthur's Clock,* 105 B.R. at 672 (as cited at p. 657, supra).

In our case the parties have stipulated that the value of the transferred property is $25,105.72. Although they do not state whether $25,105.72 equals the fair market value of the property on the date the property was transferred, this figure is identical to the amount credited to Montana's account by International Ski at the time the property was transferred. In the absence of any dispute between the parties, using the figure of $25,105.72 as the fair market value of the property transferred is consistent with prior case law. The cases finding a statutory preference for the return of the property under the language of Section 550(a) are not compelling when the value of the property is so easily determined. It is within the sound discretion of the court whether to order recovery of the property or its value. Certainly, the term "for the benefit of the estate" in Section 550(a) guides the court in exercising its discretion. Presumably, the recovery of the estate will be enlarged by eliminating both the expenses of administering a sale and the risk of obtaining a lower price at the sale. Although awarding a cash judgment based on the agreed value of the property forecloses the possibility of the estate's obtaining a higher price upon sale, I am satisfied that the trustee's desire in this instance should be presumed to reflect a reasoned judgment as to the probabilities of that occurring.

Upon the foregoing, it may be ordered that the trustee recover the sum of $25,325.04 from Montana in cash rather than in kind.