**Faith M. DERDERIAN,**

v.

**POLAROID CORPORATION, William Bianchi, Lee C. Brewer, Thomas Buffum, Richard Kirkendall, William J. Ryan, Robert Brecheiser.**

Civ. A. No. 88–0027–Mc.

United States District Court,
D. Massachusetts.

July 13, 1988.

John S. Legasey, Lisa Stern Taylor, Ardiff & Morse P.C., Danvers, Mass., for plaintiff.

Scott C. Moriearty, Ruah Donnelly Lahey Bingham, Dana & Gould, Boston, Mass., for defendants.

MEMORANDUM ON DEFENDANTS' MOTION TO QUASH PLAINTIFF'S NOTICE OF DEPOSITION OF ANN LEIBOWITZ, OR IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER (# 32)

ROBERT B. COLLINGS, United States Magistrate.

In this case, plaintiff has sued her employer, Polaroid, and several officials and/or employees of Polaroid, alleging that she was not given a promotion within Polaroid to a position in Italy because of sex discrimination. The plaintiff has noticed the deposition of Ann G. Leibowitz, one of

Polaroid's in-house counsel, who evidently interviewed several of Polaroid's officers and/or employees in connection with plaintiff's allegations. Polaroid has moved to quash the notice.

It is beyond question that statements made by Polaroid employees to Ms. Leibowitz during her investigation into plaintiff's allegations are privileged. *Upjohn v. United States*, 449 U.S. 383, 395–97, 101 S.Ct. 677, 685–86, 66 L.Ed.2d 584 (1981). However, plaintiff's attorney seeks to depose Ms. Leibowitz with respect to statements made to her during the investigation by two named defendants, William Bianchi and Lee Brewer, arguing that the disclosure of these statements or portions of them by Ms. Leibowitz to plaintiff's then-counsel prior to the institution of suit operated as a waiver of the attorney-client privilege as to the statements.

In support of its position, plaintiff has submitted the Affidavit Of S.K. Derderian (# 41) who is plaintiff's father but is also an attorney and acted as his daughter's attorney prior to the institution of the suit. He avers that Ms. Leibowitz told him "specifically" that:

A. William Bianchi had said that he did not want a broken woman on his hands; and

B. The reason that Lee Brewer had initially given Faith for her not getting the job was not the "real reason"; that Lee Brewer had finally told Faith the truth; i.e., that Bianchi did not want a "broken woman" on his hands, because Faith had questioned him so persistently.

Ms. Leibowitz has also filed an Affidavit, Etc. (# 45). She avers that:

[During meetings with Mr. Derderian] I did not reveal to him the contents of my discussions with Polaroid employees. More specifically, at the time I spoke with Mr. Derderian, I had not discussed this matter with William Bianchi or Joseph McLaughlin at all. I did not tell Mr. Derderian that "William Bianchi had said that he did not want a broken woman on his hands" or words to that effect. I did not tell Mr. Derderian that Lee Brewer had not initially told his daughter the "real reason" for her not obtaining the Italian job, that he had finally told her the truth, or that the "real reason" was that Bianchi did not want a "broken woman" or words to that effect.

It is apparent that the question of whether there was a waiver is dependent on how the conflicting statements of Mr. Derderian and Ms. Leibowitz are resolved by a factfinder, since the argument that there has been a waiver rests on Mr. Derderian's claim that, in fact, Ms. Leibowitz revealed the content of defendants Brewer and Bianchi's statements to him, a fact which Ms. Leibowitz denies.

Polaroid claims that the Court need not resolve the factual dispute between Mr. Derderian and Ms. Leibowitz in order to rule on its motion to quash.

In this connection, Polaroid argues that regardless of what Ms. Leibowitz did or did not say to Mr. Derderian, it is not disputed that the meeting between them was for the purpose of attempting to settle the case, and, therefore, statements made during the meeting are inadmissible pursuant to Rule 408, F.R.Evid., and should not be the subject of discovery. That Rule provides:

Evidence of (1) furnishing or offering or promise to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. *Evidence of conduct or statements made in compromise negotiations is likewise not admissible.* This rule does not require the exclusion of any evidence otherwise discoverable because it is presented in the course of compromise negotiations. The rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Emphasis supplied.

The sentence in Rule 408, F.R.Evid., which is underlined above appears to have

changed what was previously the law in this Circuit. In the case of *Hiram Ricker & Sons v. Students International Meditation Society*, 501 F.2d 550, 553 (1 Cir., 1974), the Court, while noting that "... evidence of settlement negotiations is generally inadmissible ...," further stated that:

> [T]here is a "well-recognized exception regarding admissions of fact as distinguished from hypothetical or provisional concessions conditioned upon the settlement's completion." *NLRB v. Gotham Indus., Inc.*, 406 F.2d 1306, 1313 (1st Cir.1969). *See generally* 4 Wigmore, Evidence § 1061 (Chadbourn rev. 1972).

501 F.2d at 553.

The Advisory Committee notes that Rule 408, F.R.Evid., was specifically drafted with the intent of expanding the "common law rule" which is exemplified by the Court's holding in the *Hiram Ricker* case. The Advisory Committee wrote that:

> The practical value of the common law rule has been greatly diminished by its inapplicability to admissions of fact, even though made in the course of compromise negotiations, unless hypothetical, stated to be "without prejudice," or so connected with the offer as to be inseparable from it. McCormick, § 251, pp. 540–541. An inevitable effect is to inhibit freedom of communication with respect to compromise, even among lawyers. Another effect is the generation of controversy over whether a given statement falls within or without the protected area. These considerations account for the expansion of the rule herewith to include evidence of conduct or statements made in compromise negotiations as well as the offer or completed compromise itself.

Thus, if the dialogue between Mr. Derderian and Ms. Leibowitz can be said to be "compromise negotiations," any statements of fact which Ms. Leibowitz made during the meeting would not be "admissible" unless the statements are of the type which are not rendered inadmissible by the terms of Rule 408, F.R.Evid. A statement by Ms. Leibowitz made during the meeting with Mr. Derderian as to what Messrs. Bianchi and Brewer said to her when she interviewed them during her investigation would certainly qualify as a statement of "fact."

On the record before me, I find that the discussions between Mr. Derderian and Ms. Leibowitz were "compromise negotiations" and that any statements Ms. Leibowitz made during the discussions as to what Messrs. Bianchi and Brewer had said to her were made "in the course of" the compromise negotiations. In her first Affidavit (Exhibit B to Defendants' Memorandum, Etc. (# 33)), Ms. Leibowitz avers that when she learned of the complaints Mr. Derderian was making on behalf of his daughter:

> [She] telephoned attorney Derderian in order to identify the exact nature of the claim and see whether it could be resolved. She asked for a meeting to discuss it further. Several weeks later I met with Attorney Derderian and with Polaroid's outside counsel to explore potential avenues of resolution of settlement. Our discussion was directed toward attorney Derderian's settlement demands.

Affidavit, Exhibit B to Defendants' Memorandum, Etc. (# 33).

In his Affidavit, Etc. (# 41), Mr. Derderian does not contradict Ms. Leibowitz' characterization of the meeting; neither does plaintiff's attorney. Rather, plaintiff's attorney assumes *arguendo* that "... all discussions between Attorneys Derderian and Leibowitz are inadmissible to prove liability of damages under Rules 408 ..." but rests on his contention that the deposition should go forward because the statement is not excluded from admission into evidence by Rule 408, F.R.Evid. Memorandum, Etc. (# 40).

Plaintiff's argument that the statement is not excluded from admission into evidence runs as follows:

> ... [The] statements may be admissible if introduced for another purpose. Plaintiff has such a purpose: She seeks to discover what various employees of Polaroid told Attorney Leibowitz so as to be able to cross-examine and, possibly, im-

peach those individuals should they make statements in the course of this litigation which are at variance with what they told in-house counsel.

Memorandum (# 40) at p. 4.

The import of what plaintiff's counsel is arguing is that he wants to depose Ms. Leibowitz in order to elicit testimony as to what Messrs. Bianchi and Brewer told her when she interviewed them. Plaintiff's counsel is *not* seeking the deposition to inquire as to what statements Ms. Leibowitz may have made to Mr. Derderian during the compromise negotiations.

If this is plaintiff's position, defendants' argument based on Rule 408 becomes untenable because plaintiff is *not* seeking discovery or even the admission of "conduct or statements made in settlement negotiations." Put another way, plaintiff's counsel is not seeking discovery or the admission of Ms. Leibowitz' statements to Mr. Derderian. Rather, plaintiff's counsel is seeking discovery as to the existence of evidence (i.e. statements which Messrs. Bianchi and Brewer purportedly made to Ms. Leibowitz) which was *revealed* at the compromise negotiations. Rule 408, F.R.Evid., specifically provides, in part, that:

> This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations.

The scenario from plaintiff's point of view is that Ms. Leibowitz would testify at her deposition that Messrs. Bianchi and Brewer made statements to her when she did her investigation. Plaintiff anticipates that Ms. Leibowitz' testimony as to the content of the statements made by Messrs. Bianchi and Brewer would be consistent with what plaintiff claims Ms. Leibowitz told Mr. Derderian at the compromise negotiations. However, the purpose of the depositions would be to obtain testimony as to what Messrs. Bianchi and Brewer told Ms. Leibowitz when she interviewed them. Ms. Leibowitz' testimony as to the prior statements would be admissible at trial at least against Messrs. Bianchi and Brewer as parties-defendant pursuant to Rule 801(d)(2)(A), F.R.Evid. This scenario does not involve the admission into evidence of any conduct or statements made during the compromise negotiations. If, at her deposition, Ms. Leibowitz denies that Messrs. Bianchi and Brewer made the statements which plaintiff seeks to attribute to them, the matter would be at an end. The only evidence which the plaintiff would then have are the statements of Ms. Leibowitz to Mr. Derderian during the compromise negotiations; these would be inadmissible pursuant to Rule 408, F.R.Evid.[1]

This analysis also answers defendants' argument that the plaintiff has "... no need to depose Ms. Leibowitz in order to obtain the material for impeachment of

---

1. Defendants note that "[t]he law is apparently unsettled as to the admissibility for impeachment purposes alone of prior inconsistent statements of a party made in the course of settlement negotiations" and cites Wright & Graham, *Federal Practice & Procedure: Evidence* § 5314 at p. 283–7 and authority cited therein. The authors of the treatise note the conflict between the purpose of the rule rendering statements made at compromise negotiations inadmissible (encouragement of settlements) and the purpose of the Rules in general of placing all relevant evidence before the trier of fact ("finding the truth"). The authors would resolve the conflict by allowing introduction of a party's statement made at the compromise negotiations for purposes of impeachment in order to foster the values of "fairness" and "truth" found in Rule 102, F.R.Evid. Based on the expansive reading given both the wording and the stated purpose of encouraging settlements which underlies Rule 408, F.R.Evid., by the First Circuit Court of

Appeals in the case of *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247, 251 (1 Cir., 1985), I believe that the First Circuit, if faced with the conflict, would not allow the admission of statements made at compromise negotiations even for impeachment purposes because in the usual case, an analysis of both nature of the claims in a case and the content of the purported statements would lead to the conclusion that such impeachment evidence would be nothing more than "camouflaged" evidence on liability. *Id.* at 248. This would be so even if the statements, although of parties and therefore admissible as substantive evidence under Rule 801(d)(2)(A), F.R.Evid., were only admitted for purposes of impeachment for purposes of judging credibility. In the usual case, the issue of credibility would concern testimony of facts directly bearing on liability, and to admit the testimony of statements made at compromise negotiations for this purpose would "... flout the most basic policies underlying Rule 408." *Id.* at 249.

these witnesses [because] Mr. Derderian can testify that he was told of prior inconsistent statements by these witnesses, and no deposition of Ms. Leibowitz would improve the chances of these alleged prior inconsistent statements being admissible at trial." Defendants' Reply Memorandum, Etc. (# 49) at p. 2. Even apart from the multiple hearsay problems, Mr. Derderian cannot testify as to Ms. Leibowitz' statements because they were made during "compromise negotiations." Ms. Leibowitz can, consistent with Rule 408, F.R.Evid., be required to testify as to statements Messrs. Bianchi and Brewer made to her during her investigation because the statements of Messrs. Bianchi and Brewer were not "made in compromise negotiations" but rather were "presented" in the course of these negotiations.

In sum, plaintiff does have a need to depose Ms. Leibowitz if the statements of Messrs. Bianchi and Brewer are "otherwise discoverable." Rule 408, F.R.Evid. Therefore, I must resolve the issue of whether Ms. Leibowitz made the statements at the compromise negotiations which Mr. Derderian claims she made. Defendants' attempts to persuade me that I can decide the motion to quash without resolving the factual dispute as to what Ms. Leibowitz said during the compromise negotiations is unavailing. If I find that Ms. Leibowitz revealed what Messrs. Bianchi and Brewer told her to Mr. Derderian, the attorney-client privilege will have been waived as to those statements and the motion to quash will be denied. If I find that Ms. Leibowitz did not reveal to Mr. Derderian what Messrs. Bianchi and Brewer told her when she interviewed them as part of her internal investigation, the privilege will stand and the motion to quash will be allowed.

Thus, before the deposition of Ms. Leibowitz will be permitted to go forward, the Court will have to hold a hearing at which time the parties can present testimony on the issue of whether or not Ms. Leibowitz revealed to Mr. Derderian the content of the statements of Messrs. Bianchi and Brewer which each had made when she interviewed them as part of her internal investigation.

If the plaintiff wishes to go forward with its Notice of Deposition on this basis, she shall notify the Court *in writing* (copy to counsel for the defendants) to that effect *on or before the close of business on Tuesday, July 19, 1988*. If no notification is received, the motion to quash will be allowed. If notification is received, a hearing will be scheduled at which the Court will hear evidence and resolve relevant disputes of fact.