## In re INDUSTRIAL & MUNICIPAL ENGINEERING, INC., Debtor.

Richard E. BARBER, Chapter 7 Trustee for Industrial & Municipal Engineering, Inc., Plaintiff,

v.

Gene LEBO, Defendant.

Bankruptcy No. 89–81834.
Adv. No. 90–8107.

United States Bankruptcy Court,
C.D. Illinois.

Nov. 20, 1990.

Barry Barash, Galesburg, Ill., for plaintiff.

John P. Harris, Moline, Ill., for defendant.

## OPINION

WILLIAM V. ALTENBERGER,
Bankruptcy Judge.

Prior to the Debtor filing its bankruptcy proceeding, the Defendant had been employed by the Debtor and had sued the Debtor for wages due. In December of 1987, the litigation was settled for $42,-500.00 and judgment was entered for that amount. To satisfy the judgment, the Debtor made an initial payment of $10,-000.00, and over a twenty-two month period, four $5,000.00 payments in six month intervals. The last payment was made on September 5, 1989. After the Debtor's bankruptcy proceeding was converted to one under Chapter 7, the Debtor's trustee filed a preference action to recover the last $5,000.00 payment along with prejudgment interest. The Defendant contends the payment was made in the ordinary course of Debtor's business.

There are two issues before the Court. They are: (1) Was the payment on the judgment a payment in the ordinary course of business, and (2) if not, is the trustee entitled to prejudgment interest.

Section 547(c)(2) provides as follows:

(c) The trustee may not avoid under this section a transfer—

. . . .

(2) to the extent that such transfer was—

(A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(C) made according to ordinary business terms;

4 *Collier on Bankruptcy,* Para. 547.10, in discussing this section, states:

This section is intended to protect recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee.

[Its] purpose is to leave undisturbed normal financial relations, because [doing so] does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy.

. . . .

To fall under the "ordinary course" exception, a transferee must show that: (i) the underlying debt on which payment was made was "incurred in the ordinary course of business or financial affairs" of both parties; (ii) the transfer was made "in the ordinary course of business or financial affairs" of both parties; and (iii) the transfer as made "according to ordinary business terms." The Code fails, however, to define these phrases. Those courts testing a transfer for "ordinariness" under section 547(c)(2) have generally focused on the prior conduct of the parties, the common industry practice, and, particularly, whether payment resulted from any unusual action by either the debtor or creditor. (Footnotes omitted.)

In *Hickey v. Nightingale Roofing, Inc.,* 83 B.R. 180, 18 C.B.C.2d 1337 (D.Mass.1988) the court rejected the idea that payments of a litigation settlement fall within the scope of Section 547(c)(2).

■ Although this Court is not ready to adopt a per se rule as the court did in *Hickey,* it agrees with the result in *Hickey.* The legislative history of Section 547(c)(2) was quoted by the court in *Hickey* as follows:

The purpose of this exception is to leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy. S.Rep.No. 95–989, 95th Cong., 2d Sess. 88, reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5874.

with the court going on to state:

In short, this exception was apparently designed to provide an exemption from preferential treatments for those short term obligations to cash creditors whose debts generally come due on something like a monthly basis. It was "payments made by a debtor to employees, suppliers, for utilities and rent, and other similar operating expenses or trade credit transactions [which] were intended by Congress to be exempt from recovery as preferences." *In re Bourgeois,* 58 Bankr. 657, 659 (Bankr.W.D.La.1986).

This exception was designed to protect creditors such as employees or trade creditors, who, continuing to do business with a debtor on a regular basis do not thereby contribute to a debtor's slide into bankruptcy.

■ In the case before this Court, the payment was made at regular intervals. But that fact alone does not qualify the payment for the exception. The judgment was not incurred in the ordinary course of the Debtor's business. It was incurred to settle a lawsuit. Nor was the payment made according to ordinary business terms. It was a special payment. Contrary to the result which could be expected if employees or trade creditors stopped supplying services or materials which the debtor required on a regular basis, the Defendant had nothing of this nature to offer to the Debtor. The Defendant was not an employee or trade creditor providing materials or services, which if cut off would precipitate the debtor's slide into bankruptcy. The Defendant no longer worked for the Debtor and whether he was paid or not paid would not deny the Debtor of services needed for its operations.

■ The next issue is whether the Trustee can recover prejudgment interest. The Trustee seeks prejudgment interest at the federal judgment rate from September 5, 1989, the date the preferential payment was made. An award of prejudgment interest on a preferential transfer is not mandatory, but rests in the discretion of the court. *In re Bellanca Aircraft Corp.*, 850 F.2d 1275 (8th Cir.1988); *In re First Software Corp.*, 107 B.R. 417 (D.Mass.1989). While recognizing the discretionary nature of such an award, the majority rule favors prejudgment interest in preference actions. *See In re Home Co.*, 108 B.R. 357 (Bkrtcy. N.D.Ga.1989); *In re Bridge*, 106 B.R. 474 (Bkrtcy.E.D.Mich.1989); *In re Osage Crude Oil Purchasing, Inc.*, 103 B.R. 256 (Bkrtcy.N.D.Okla.1989); *In re L & T Steel Fabricators, Inc.*, 102 B.R. 511 (Bkrtcy.M. D.La.1989). A prevailing standard, though not uniformly accepted, is whether the amount of the transfer could have been ascertained without a judicial determination. *Bellanca Aircraft, supra; First Software, supra.* As stated by the court in *First Software:*

> Prejudgment interest should be included as an element of damages when the amount of the claim is either liquidated or "reasonably ascertainable by reference to established market values." The court's prejudgment inquiry is reducible "to whether the demand is of such a nature that its exact pecuniary amount was either ascertained or ascertainable by simple computation or by reference to generally recognized standards such as market price." (Citations omitted.)

■ Given the recent pronouncement of the Seventh Circuit Court of Appeals in *Gorenstein Enterprises v. Quality Care–USA*, 874 F.2d 431 (7th Cir.1989), that an award of prejudgment interest is presumptively available to victims of federal law violations, this Court finds that the Trustee is entitled to prejudgment interest in this case. However, the Trustee is not entitled to interest from the date the preferential payment was made. An award of interest accrues from the date of the demand, or from the date of the commencement of the adversary proceeding. *In re Home Co.,*

*supra; In re L & T Steel Fabricators, Inc., supra.* The rationale behind the rule was explained by the court in *In re Nelson Co.*, 117 B.R. 813 (Bkrtcy.E.D.Pa.1990):

> Interest does not run from the date of the preferential transfer, because the transfer is not improper in any respect at the time it occurs. The determination of a preference and the recovery of the transfer under section 550 are based upon a subsequent event—the transferor's bankruptcy filing—and upon a analysis of the debtor's financial structure within that bankruptcy (i.e., that the transferee would receive more if it retained the transfer than if the debtor's assets were liquidated). Because the transfer is initially proper, and because there must be some affirmative decision made, supported by section 547(b), to recover the transfer, the consensus position is that prejudgment interest does not begin to accrue until some affirmative demand is made of the transferee to return the transfer.

Absent proof of a demand prior to the filing of the adversary proceeding, interest will accrue on the date the action is filed. *In re Advertising Associates, Inc.*, 95 B.R. 849 (Bkrtcy.S.D.Fla.1989). The amount of interest is to be calculated at the applicable rate of interest pursuant to 28 U.S.C. Section 1961. *In re NuCorp Energy, Inc.*, 902 F.2d 729 (9th Cir.1990). Because the adversary proceeding was filed on July 2, 1990, this Court will grant prejudgment interest from that date at the rate of 8.09%, which was the coupon issue yield equivalent for the June 28, 1990, auction of 52–week United States Treasury bills.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion filed this day;

IT IS, THEREFORE, ORDERED:

1. That the Plaintiff's motion for summary judgment is GRANTED;

2. That judgment is entered in favor of the Plaintiff and against the Defendant in the amount of $5,000.00, plus interest at the rate of 8.09% from July 2, 1989, through the date of this Order, plus costs.